ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARMEN MARRERO TORRES; Y OTROS<br><br>Parte Demandante<br><br>v.<br><br>RULMERY LOZADA MARRERO; Y OTROS<br><br>Parte Demandada | TA2026AP00322 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Número: BY2023CV05153 Consolidado con BY2025CV01946<br><br>Sobre: Liquidación de participación hereditaria y daños y perjuicios |
| AMELIA MARRERO TORRES<br><br>Apelante<br><br>v.<br><br>CARMEN JUDITH MARRERO TORRES; Y OTROS<br><br>Apelado | | Caso Número: BY2025CV01946<br><br>Sobre: Adveración y protocolización de testamento ológrafo |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno

Rivera Marchand, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece ante esta Curia, la señora Amelia Marrero Torres (Apelante) mediante un recurso intitulado *Escrito de Apelación.* Solicita que revoquemos la *Sentencia Parcial* que notificó el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI o foro primario), el 6 de febrero de 2026. Mediante el aludido dictamen, el foro primario desestimó con perjuicio la causa de acción sobre adveración y protocolización de testamento ológrafo que promulgó la Apelante.

Por los fundamentos que esbozamos a continuación, confirmamos el dictamen apelado.

**I.**

El 18 de septiembre de 2023, Carmen Judith y Néctar de apellidos Marrero Torres; Wanda Ivelisse y Mayra Enid de apellidos Marrero Vallellanes; Carmen María y Eladio de apellidos Marrero Figueroa (Demandantes) -como miembros de la Sucesión Manuel Marrero Torres- incoaron una causa de acción sobre liquidación de participación hereditaria y daños y perjuicios en contra de FirstBank Puerto Rico, Rulmery Lozada Marrero (Sra. Lozada Marrero) y otros demandados de nombre desconocido.[1]

En síntesis, alegaron ser herederos del causante, Manuel Marrero Torres, quien falleció intestado, el 21 de marzo de 2022, sin haber contraído matrimonio, sin haber procreado hijos y cuyos padres le premurieron. Sustentado en lo anterior, arguyeron ser los únicos herederos del causante en calidad de hermanos, hermanas y sobrinas, por derecho de representación. Expusieron que, la codemandada Sra. Lozada Marrero carece de un derecho hereditario sobre el caudal del causante, como hija de la heredera, María Socorro Marrero Torres.

Según las alegaciones de la *Demanda*, el mismo día en que falleció el Sr. Manuel Marrero Torres, la Sra. Lozada Marrero - maliciosa e intencionalmente, sin autorización-, se apropió de $108,000.00 que el causante tenía depositados en su cuenta bancaria con FirstBank. Agregaron que, el 25 de marzo de 2022, la Sra. Lozada Marrero realizó otro retiro de $2,000.00 de la referida cuenta bancaria, también sin el consentimiento de la Sucesión Marrero Torres. Aseguraron no haber advenido en conocimiento de estos hechos hasta el 16 de junio de 2023.

---

[1] Surge de la *Demanda* que también son miembros de la Sucesión Manuel Marrero Torres, María Socorro, Jorge y Amelia de apellidos Marrero Torres, mas no son parte demandante.

Allí también, imputaron a FirstBank incurrir en mala práctica bancaria al permitir el retiro de fondos de una cuenta bancaria perteneciente a una persona fallecida. Sustentado en lo anterior, alegaron que la Sra. Lozada Marrero y FirstBank son solidariamente responsables por los daños reclamados, ascendentes a $493,750.00, más costas, gastos y honorarios de abogado.

En su alegación responsiva, FirstBank expuso que fue notificado sobre el fallecimiento del causante con posterioridad a las transferencias de fondos que realizó la Sra. Lozada Marrero. Aseguró haber puesto un "hold" a los fondos que la Sra. Lozada Marrero transfirió a su cuenta personal con FirstBank. Lo antes, por el dinero provenir de una cuenta conjunta en donde existe un cotitular fallecido.

Por su parte, la Sra. Lozada Marrero contestó la demanda en la cual negó la mayoría de las alegaciones en su contra y presentó varias defensas afirmativas, entre ellas, donación y que la demanda deja de exponer una reclamación que justifique la concesión de un remedio.

Cabe señalar que, tras el desistimiento voluntario de los Demandantes con respecto a la causa en contra de FirstBank, el TPI notificó una *Sentencia Parcial*, el 19 de diciembre de 2023, mediante la cual archivó dicha reclamación, con perjuicio. En igual fecha, el foro primario emitió una *Orden* dirigida a dicha institución bancaria a los efectos de que consigne ante el TPI la suma de $110,000.00 provenientes de la cuenta de la Sra. Lozada Marrero.

El 24 de enero de 2024, los Demandantes enmendaron la demanda a los fines de añadir como parte demandante a Jorge Marrero Torres. Además, incluyeron como codemandadas a la Apelante y a María Socorro Marrero Torres, por entender que ellas, en común acuerdo con la Sra. Lozada Marrero, intentaron defraudar a los Demandantes y ocultaron información sobre las mencionadas

transferencias. Señalaron que, la Sra. Lozada Marrero no presentó prueba atinente a la donación argüida.

En respuesta a lo anterior, la Sra. Lozada Marrero instó una *Contestación a Primera Demanda Enmendada* en la cual, por primera vez, levantó como defensa afirmativa que el causante otorgó un testamento ológrafo mediante el cual la instituyó como legataria de su cuenta bancaria en FirstBank.

Paralelamente, el 15 de abril de 2025, la Apelante instó un pleito independiente (caso Civil Núm. BY2025CV01946), de Petición *Ex parte* sobre Adveración y Protocolización de Testamento Ológrafo. En reacción, el 17 de abril de 2025, los Demandantes solicitaron intervenir en dicho pleito y expresaron su oposición a la adveración y protocolización del testamento, ante el presunto incumplimiento con los requisitos legales que establece el Artículo 1653 del Código Civil de Puerto Rico de 2020 (Código Civil), 31 LPRA sec. 11284.

En particular, mencionaron la falta de presentación ante un foro judicial o un notario dentro de los treinta (30) días siguientes a tener conocimiento del fallecimiento del testador; la omisión de promover diligentemente la adveración y notificación a los herederos durante 160 semanas y 1 día; y la falta de prueba sobre el estado mental del testador al momento de redactar el manuscrito. Asimismo, cuestionaron la autenticidad de la letra y la firma del testador y solicitaron la celebración de una vista evidenciaria para evaluar el documento original con prueba pericial caligráfica.

El 28 de abril de 2025, el TPI transfirió el caso Civil Núm. BY2025CV01946 a la Sala del TPI que atiende el caso Civil Núm. BY2023CV05153 por tratarse de causas similares.

Así las cosas, el 13 de mayo de 2025, la Sra. Lozada Marrero desistió de sus alegaciones atinentes a ostentar un derecho sobre el caudal hereditario del causante, Manuel Marrero Torres. A solicitud de la Sra. Lozada Marrero y debido a que los Demandantes

reclamaron daños y perjuicios junto a las controversias hereditarias, el 4 de junio de 2025, el TPI ordenó a los Demandantes prestar una fianza de no-residente de $1,000.00. Poco después, el 17 de junio de 2025, ordenó la consolidación del caso Civil Núm. BY2023CV05153 con el caso Civil Núm. BY2025CV01946 por entender que surgen del mismo núcleo fáctico y que el proceso de adveración y protocolización incide directamente sobre la liquidación y partición del caudal hereditario.

Durante la vista de adveración y protocolización de testamento ológrafo, celebrada el 13 de noviembre de 2025, las partes presentaron prueba documental y testifical.[2] Aquilatada la prueba, el foro primario declaró No Ha Lugar a la adveración y formuló las siguientes determinaciones de hechos:

1. Según el certificado de defunción expedido el 1 de septiembre de 2023, el causante, Sr. Manuel Marrero Torres nació el 2 de julio de 1943 y falleció el 21 de marzo de 2022 a la edad de 78 años. La causa del fallecimiento acorde con el mencionado certificado fue un fallo respiratorio.
2. En la demanda de adveración y protocolización de testamento ológrafo instada el 15 de abril de 2025 en el caso civil núm. BY2025CV01946 por la Sra. Amelia Marrero Torres, se anejó un documento que se alega es un testamento ológrafo aparentemente suscrito por el causante el Sr. Manuel Marrero Torres.
3. El documento fue elaborado el 27 de enero de 2022 y dice lo siguiente: "Yo Manuel Marrero Torres le doy el poder a mi ahijada y sobrina Rulmery Lozada Marrero a disponer de mi dinero en mi enfermedad o muerte. Según la autorice en el banco. También quiero que ayude a mi hermana Nelly que fue la que estuvo conmigo en las buenas y malas. El carro lo pueden vender o quedarse con él."
4. El mencionado texto del documento objeto de controversia está escrito en letra de molde o manuscrito.
5. Al final del documento aparece una alegada firma en letra cursivo del causante que la demandante sostiene que dice Manuel Marrero Torres, nombre del causante.
6. Al leerse la firma del documento del 27 de enero de 2022 se puede colegir técnicamente que dice Manuel Manuel Torres.
7. Durante la vista, el Sr. Evaristo Álvarez Ghigliotti (señor Álvarez), perito en documentología forense con 36 años de experiencia, concluyó en sala que no tiene dudas de que el causante, el Sr. Manuel Marrero Torres aparentemente escribió y firmó el documento del 27 de enero de 2022 el cual

---

[2] A favor de la parte apelante declararon la Apelante, la Sra. Lozada Marrero, la Sra. María Socorro Marrero y el perito Evaristo Álvarez Ghigliotti. La prueba testimonial de los Demandantes consistió en las declaraciones de Carmen Judith Marrero Torres y el licenciado Héctor Marrero Marrero.

se alega que es un testamento ológrafo dado a que el mismo presuntamente coincide con las firmas y escritura de los demás documentos comparados.

8. El señor Álvarez como parte del presente caso realizó para el 18 de mayo de 2025 un informe pericial caligráfico en donde concluyó que el Sr. Manuel Marrero Torres escribió y firmó el alegado testamento ológrafo con fecha del 27 de enero de 2022.

9. De acuerdo con el informe pericial y lo declarado por el señor Álvarez el comparó el documento del 27 de enero de 2022 (alegado testamento ológrafo) con los siguientes 10 documentos: 5 documentos del foro federal relacionados a un asunto de quiebra del causante, 2 cheques, licencia de conducir, un acuse de recibo de depósito con la firma del causante, la tarjeta de FIGNA y dos fotos con escritura al dorso que alegan que es la letra del causante. A esos 10 documentos se les denominó en el informe pericial como K1 al K12 mientras que al alegado testamento ológrafo se le designó como Q1.

10. El señor Álvarez indicó que el método de comparación utilizado para evaluar el documento del 27 de enero de 2022 fue el "side by side comparison" el cual es la comparación lado a lado de las letras. El mencionado método, según lo declarado por el perito, busca las características, elementos y cualidades para ver si coinciden las firmas con la firma que se está cuestionando. Dicho método es reconocido por la comunidad científica forense y en el 2022 se aprobó por la Academia de Ciencias Forenses de EE.UU.

11. A pesar de su conclusión, el señor Álvarez durante la vista también expuso que en el documento del 27 de enero de 2022 técnicamente la firma dice Manuel Manuel Torres. Igualmente reconoció que de los documentos analizados el causante siempre firmaba como Manuel Marrero Torres.

12. De un examen de la licencia de conducir, la tarjeta de FIGNA, el acuse de recibo de cuenta de depósito, los cheques 253 y 208, los cuales fueron admitidos como prueba en la vista, se puede concluir que el causante siempre firmaba en letra cursivo y con sus dos apellidos como Manuel Marrero Torres. Esto también surge de los documentos firmados por el causante para la Corte de Quiebras Federal en donde la firma del causante aparece en cursivo y dice Manuel Marrero Torres, los cuales se usaron en el examen del informe pericial.

13. La firma del nombre del causante en esos documentos antes mencionados es clara y se puede observar que está escrito de manera legible el apellido Marrero.

14. Las dos fotos presentadas como prueba durante la vista se describen de la siguiente forma: en una aparece el causante con su sobrina la señora Lozada cuando era niña (en el cumpleaños de esta según lo declarado por la Sra. María Socorro Marrero) y en la otra aparece el causante con su hermana, la Sra. María Socorro Marrero y otros familiares y amistades. Ambas fotos en el dorso aparecen unas dedicaciones escritas en letra de molde o manuscrito y presuntamente de la autoría del causante. Que las mismas son fotos que estaban bajo la custodia de la Sra. María Socorro Marrero.

15. En la foto que aparece con su sobrina dice: "ahijada sobrina Manuel Marrero" mientras que la foto donde aparece con su

hermana dice: "Mi hermana María". Tales fotos se utilizaron en el informe pericial.

16. Durante la vista, la señora Lozada, sobrina del causante, declaró que a veces el causante firmaba los cheques al frente de ella, que había visto la firma de su tío todo el tiempo ya que el causante hacía las notas del supermercado y expuso que la firma del cheque 253 es la del causante.

17. En la vista, la señora Lozada alegó que la firma del causante podía ser en cursivo como en manuscrito.

18. La señora Lozada testificó en la vista que el documento del 27 de enero de 2022, el alegado testamento ológrafo, se lo entregó su tío (el causante) a ella en su casa para enero de 2022 y que dicho documento está firmado y escrito por el Sr. Manuel Marrero Torres. Indicó que la firma es la misma letra en cursivo del cheque 253.

19. La señora Lozada expuso que en cuanto al documento de acuse de recibo de cuenta de depósito ella vio cuando el causante lo firmó para el 27 de enero de 2022, ya que ese día ella acompañó a su tío para realizar una gestión en el banco con el fin de que el causante la autorizara a ella para estar en dicha cuenta para cualquier evento de ser enfermara o muriera. Describió que la firma del acuse de recibo es la del causante mientras que la otra firma es la de ella.

20. En la vista, la señora Lozada mencionó que ella nunca le enseñó el alegado testamento ológrafo a nadie hasta que se instaron los casos en el tribunal. Ella lo trajo al tribunal y el foro tomó custodia del mismo.

21. La señora Lozada testificó durante la vista que la Sra. Amelia Marrero Torres y la Sra. María Socorro Marrero Torres, al suscribir sus respectivas declaraciones juradas anejadas a la demanda de adveración y protocolización de testamento ológrafo, lo hicieron viendo la copia del documento del 27 de enero de 2022 y que estas nunca vieron el original. Las declaraciones juradas fueron suscritas el 14 de abril de 2025.

22. Aunque durante el proceso judicial, la señora Lozada indicó que le había enseñado el documento del 27 de enero de 2022 a la Sra. Amelia Marrero Torres para marzo de 2025 durante su testimonio aclaró que nunca le enseñó el documento, sino que se lo dijo a ella de manera verbal sobre la existencia del mismo.

23. La señora Lozada indicó en la vista que su tío (el causante) firmaba con sus dos apellidos y aunque expresó que la firma del alegado testamento ológrafo dice Manuel Marrero Torres, la testigo reconoció que en dicha firma puede haber una letra O o una letra L.

24. La señora Lozada mencionó en la vista que el mismo día que acompañó a su tío al banco para ser parte y cofirmante de la cuenta de banco del causante fue el mismo día que el causante firmó el presunto testamento ológrafo.

25. Durante la vista, la señora Lozada expresó que el causante le entregó en un sobre a la mano el presunto testamento ológrafo durante la tarde y que no conocía lo que su tío quería hacer. Expuso que, una vez le dio ese documento, ella lo guardó y que al momento de entregárselo a ella leyó lo que decía el mismo, luego la volvió a sellar. Señaló que el causante estuvo presente con ella y la había autorizado a abrir la carta donde contenía el documento.

26. La señora Lozada testificó en la vista que el documento del 27 de enero de 2022 lo guardó en una gaveta localizada en un cuarto de su casa.

27. En la vista, la señora Lozada reconoció que un poco más de un año después menciona el documento debido a que la demandaron en el presente caso, que había indicado durante el pleito que tenía un documento donde le hacían una donación refiriéndose al presunto testamento ológrafo, que lo tuvo por 3 años para luego de esos 3 años hacer su entrega al tribunal y que en ese lapso nunca inició un proceso de adveración.

28. La señora Lozada expresó en su testimonio que no tiene derecho sobre la herencia o sobre algún documento de su tío.

29. La Sra. María Socorro Marrero Torres, hermana del causante y madre de la señora Lozada, testificó en la vista que había visto la letra y firma de su hermano. Mencionó que, cuando el causante iba a su casa, este firmaba los cheques en letra cursivo. Indicó que el causante se pasaba en la casa de su madre escribiendo su nombre en una libreta.

30. Durante la vista, la Sra. María Socorro Marrero Torres indicó que las dos fotos admitidas como prueba (las cuales la testigo reconoció) estaban en el álbum de su casa. Señaló que el causante le entregó a ella las fotos que aparecía con los familiares y la otra foto con la niña ella se la había dado a su hermano (el causante). Mencionó que el causante luego firmó las fotos el mismo día hace muchos años.

31. La Sra. María Socorro Marrero Torres alegó en la vista que el causante había escrito y firmado las dos fotos en su presencia para que siempre se acordaran de él. Reiteró que en ambas fotos la letra es del causante.

32. En la vista, la Sra. María Socorro Marrero Torres indicó que veía al causante firmar cheques en la casa de su hermana. Mencionó que veía a su hermano escribir en letra cursivo y pudo ver la forma en que firmaba el causante.

33. La Sra. María Socorro Marrero Torres reconoció, luego de comparar lo escrito en la foto con la firma del testamento ológrafo, que una está en cursivo y la otra no. Testificó que lo escrito en ambas fotos no está en cursivo y no tienen firma.

34. La Sra. María Socorro Marrero Torres insistió en la vista que no se acuerda de la declaración jurada suscrita por esta el 14 de abril de 2025 y anejada en la demanda de adveración y protocolización de testamento ológrafo, así como tampoco se acordaba donde la firmó, aunque dijo que lo firmó en su casa en Naranjito. Hay que señalar que la mencionada declaración jurada dice que fue suscrita en San Juan. Mencionó que no se acuerda de haber visto el presunto testamento ológrafo cuando firmó la declaración jurada y que solo lo vio en el tribunal con los abogados.

35. La Sra. María Socorro Marrero Torres señaló en la vista que las únicas fotos que aparentemente están escritas por su hermano son las admitidas como prueba en este caso y que en el álbum no existen otras fotos aparentemente escritas por el causante.

36. La Sra. María Socorro Marrero Torres alegó en la vista que el causante también escribía en letra de molde y que no siempre firmaba igual, aunque reconoció que las firmas examinadas todas eran similares y en cursivo.

37. La Sra. Amelia Marrero Torres, hermana mayor del causante y con quien vivió mucho tiempo con él en la casa de sus

padres, indicó en la vista que veía a su hermano firmar cheques y cartas, así como también que tenía acceso a los documentos del causante no así a los estados bancarios del causante.

38. La Sra. Amelia Marrero Torres durante la vista mencionó la firma que aparece en la licencia de conducir y en la tarjeta de FIGNA es la de su hermano, Manuel Marrero Torres.

39. La Sra. Amelia Marrero Torres expuso en la vista que no fue a la oficina del notario en San Juan con relación a la declaración jurada suscrita el 14 de abril de 2025, anejada a la demanda de adveración y protocolización de testamento ológrafo, aunque luego aclaró que firmó dicho documento en la oficina del Lcdo. Moisés Abreu. Expresó que tampoco recuerda si cuando firmó la declaración jurada tenía algún documento firmado por el causante.

40. En la vista, la Sra. Amelia Marrero Torres al mostrarle el documento del 27 de enero de 2022, aunque expuso que la firma era la del causante, mencionó que la misma dice Manuel Manuel Torres, pero también expresó que la firma decía Manuel Marrero Torres.

41. La Sra. Amelia Marrero Torres señaló en la vista que el causante siempre firmaba con sus dos apellidos y que la firma contenida en el documento del 27 de enero de 2022, aunque parece que el apellido dice Manuel en realidad es Marrero.

42. El Lcdo. Héctor Marrero Marrero, abogado y primo del causante, mencionó en la vista que tenía dudas sobre el alegado testamento ológrafo, ya que el causante firmaba como Manuel Marrero Torres.

43. El Lcdo. Héctor Marrero Marrero expuso en la vista que defendió al causante en casos de cobro de dinero instados en su contra e indicó que la firma, así como la letra no era la del causante, ya que no se comparaba con los documentos que había trabajado al tramitar y defenderlo en esos casos de cobro de dinero.

44. El Lcdo. Héctor Marrero Marrero afirmó en la vista que la firma del documento con fecha del 27 de enero de 2022 dice Manuel Manuel Torres y el causante firmaba como Manuel Marrero Torres.

45. El Lcdo. Héctor Marrero Marrero indicó en la vista que vio el alegado testamento ológrafo dado a que la Sra. Carmen Judith Marrero Torres se lo mostró. Afirmó que al ella mostrarle el documento le dijo que esa no era la firma que conocía del causante.

46. El Lcdo. Héctor Marrero Marrero mencionó en la vista que el causante nunca le habló sobre ese documento y que la Sra. Amelia Marrero Torres no conocía del mismo hasta después que se instó el presente caso. Expresó que no tiene idea de quien había custodiado del documento.

47. El Lcdo. Héctor Marrero Marrero declaró en la vista que solo veía las firmas cuando firmaba las contestaciones a interrogatorios en los procesos donde defendió al causante. Testificó que discutían las preguntas con el causante, se preparaban las contestaciones y el causante luego las firmaba. Reiteró que veía la letra del causante y como él firmaba.

48. Durante la vista, el Lcdo. Héctor Marrero Marrero sostuvo que solo puede hablar de la firma y no de la letra del causante, que dicha firma es distinta a lo que él conoció

siempre, en otras palabras, que no era igual, y que no guardó documentos con la firma del causante.

49. La Sra. Carmen Judith Marrero Torres, hermana menor del causante, testificó en la vista que nunca había visto el alegado testamento ológrafo y que la firma contenida en el mismo no es la del causante. Afirmó que en la firma dice Manuel Manuel Torres y que la letra T, así como la letra M, estaban mal escrita.

50. La Sra. Carmen Judith Marrero Torres expresó en la vista que ayudaba al causante con sus diligencias y que lo llegó a ver firmando cheques. Expuso que el causante no escribía en letra de molde, que solo firmaba con los dos apellidos y que nunca firmó como Manuel Manuel Torres.

51. Al analizar el documento del 27 de enero de 2022, se puede concluir que el mismo no es un testamento ológrafo dado a que no cumple con los criterios legales establecidos por nuestro ordenamiento sobre esa clase de testamento.

52. Aunque el documento bajo la perspectiva del ordenamiento sobre testamento ológrafo no está caducado en ley, sí se puede establecer que la señora Lozada no presentó dicho documento para comenzar un proceso de adveración y protocolización dentro de los treinta días que se enteró de la muerte del testador.

Sobre tales bases, el foro primario concluyó que el documento, fechado el 27 de enero de 2022, no cumple con los requisitos legales aplicables a un testamento ológrafo. En lo pertinente a la firma que obra en el documento detalló:

> [e]n ese documento no se puede establecer de manera clara y exacta que dicho escrito haya sido firmado, fechado y autografiado por el causante, Sr. Manuel Marrero Torres. La prueba presentada establece de manera contundente que el causante siempre firmaba de forma clara con sus dos apellidos. De los documentos admitidos como prueba y los cuales se reconocen que contiene[n] la firma del causante vemos que este sabía escribir de forma clara el apellido Marrero sin dejar dudas en el mismo. Esto no ocurre con el documento con fecha del 27 de enero de 2022. La firma contenida en el documento objeto de la vista no aparece de forma clara el nombre Manuel Marrero Torres, sino que uno al leer la misma parece decir Manuel Manuel Torres. Esto último fue reconocido por el perito, el señor Álvarez, así como por varios de los testigos, incluso por algunos de los declarantes a favor de la parte promovente. En otras palabras, existen serias dudas de que el documento con fecha del 27 de enero de 2022 haya sido de la autoría del causante. (Énfasis suprimido.)[3]

A pesar de reconocer que el documento no había caducado, el foro primario consideró que, la Sra. Lozada Marrero lo custodió durante tres (3) años, sin mostrarlo a nadie y sin presentarlo para

---

[3] *Sentencia Parcial,* notificada el 6 de febrero de 2026, págs. 31-32. Entrada Núm. 246 en el expediente electrónico del portal del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI) del Poder Judicial, (caso Civil Núm. BY2023CV05153).

su adveración, dentro de los treinta (30) días de advenir en conocimiento de la muerte del causante, conforme lo requiere el Artículo 1653 del Código Civil, *supra.*

En cuanto al contenido del documento en letra de molde, el TPI hizo constar que, no desfiló prueba determinante sobre escritos del causante redactados a manuscrito. Añadió que, la única prueba presentada a esos efectos fueron dos fotos que contienen en el dorso un texto en letra de molde de lo cual existen dudas de que dicho contenido lo escribió el causante con su puño y letra.

De otra parte, el foro primario puntualizó que, no le merecieron credibilidad los testimonios ni el comportamiento o "demeanor" de la Apelante, de María Socorro Marrero Torres, ni de la Sra. Lozada Marrero debido a que "en ocasiones no mostraban certeza y seguridad de que el causante, Sr. Manuel Marrero Torres, haya redactado el documento objeto de la demanda y, a veces, se contradecían en sus declaraciones."[4]

Por todo lo antes, el TPI desestimó con perjuicio la demanda sobre adveración y protocolización (caso Civil Núm. BY2025CV01946) y ordenó la continuación de los procesos en cuanto a la liquidación de partición de herencia y daños y perjuicios (caso Civil Núm. BY2023CV05153).

Tras solicitar sin éxito la reconsideración del dictamen y aun en desacuerdo, la Apelante comparece ante nosotros mediante el recurso de epígrafe en el cual levanta la comisión de cinco (5) errores, a saber:

> Erró el Tribunal de Primera Instancia al tramitar y resolver el procedimiento de adveración y protocolización de testamento ológrafo como si fuera un proceso adversativo, en contravención a la naturaleza de jurisdicción voluntaria que rige este tipo de procedimiento conforme al Artículo 551-a del Código de Enjuiciamiento Civil, la jurisprudencia del Tribunal Supremo en Ab Intestato Lugo Rodríguez, 151 DPR 572 (2000), y la Sentencia del Tribunal de Apelaciones en Nayda Reyes Bou Ex Parte, TA2025AP00015 (2025), esta última procedente del mismo Centro Judicial de Bayamón y emitida meses antes de la Sentencia recurrida.

---

[4] *Íd.,* pág. 32.

Erró el Tribunal de Primera Instancia al desestimar con perjuicio la demanda de adveración y protocolización, confiriendo a esa Resolución un efecto de cierre definitivo y cosa juzgada material incompatible con la naturaleza de jurisdicción voluntaria del procedimiento, cuando la jurisprudencia reiteradamente ha establecido que la resolución que autoriza o deniega la protocolización no constituye cosa juzgada y los interesados conservan el derecho de acudir al juicio ordinario correspondiente.

Erró el Tribunal de Primera Instancia al descartar la conclusión del único perito cualificado en documentología forense que declaró en la vista — el Sr. Evaristo Álvarez Ghigliotti, con 36 años de experiencia — quien concluyó sin dudas que el causante escribió y firmó el documento del 27 de enero de 2022, sustituyendo dicha conclusión pericial por apreciaciones lega[les] sobre la apariencia visual de la firma, sin que la parte opositora presentara perito alguno en contrario.

Erró el Tribunal de Primera Instancia al aplicar estándares incorrectos sobre la autografía y firma del testamento ológrafo, al: (a) exigir que la firma reprodujera de manera idéntica el nombre del causante con ambos apellidos perfectamente legibles, cuando la ley solo requiere que el testamento esté "firmado"; (b) cuestionar la autografía del documento por estar escrito en letra de molde, cuando el Art. 1650 del Código Civil solo requiere que sea "autógrafo" sin imponer un estilo de letra específico; y (c) considerar como factor adverso el incumplimiento con el plazo de 30 días del Art. 1653, cuando dicho plazo no opera como causa de nulidad del testamento, sino como fuente de responsabilidad por daños y perjuicios.

Erró el Tribunal de Primera Instancia al denegar la moción de reconsideración de la parte apelante sin proveer fundamentación alguna, limitándose a consignar "No ha lugar. Notifíquese.", privando a la parte apelante de conocer las razones por las cuales el TPI rechazó los argumentos jurídicos sustanciales sobre la naturaleza de jurisdicción voluntaria del procedimiento y la improcedencia de la desestimación con perjuicio.

En respuesta a nuestra *Resolución,* notificada el 6 de abril de 2026, los Demandantes comparecen mediante su *Alegato en Oposición a Recurso de Apelación.* Con el beneficio de las posturas de ambas partes, resolvemos.

**II.**

**A. Testamento ológrafo**

Nuestro ordenamiento jurídico reconoce el testamento ológrafo como una de las maneras en que una persona puede disponer de todo o parte de sus bienes para después de su muerte. *In re De la Texera Barnés,* 177 DPR 468 (2009). Es de carácter privado debido a que no exige la presencia de testigos o de un

notario. *Íd.* Al otorgar un testamento ológrafo son menos las formalidades por cumplir. En particular, debe estar autografiado, fechado y firmado por el testador. Artículo 1650 del Código Civil, 31 LPRA sec. 11281. Sin embargo, su eficacia jurídica está sujeta a la realización cabal de determinados requisitos legales, so pena de nulidad. J.R. Vélez Torres, *Curso de Derecho Civil; Derecho de Sucesiones,* San Juan, Universidad Interamericana, Facultad de Derecho, 2010, T. IV, Vol. III, pág. 59. Entiéndase que, las solemnidades legales que rigen el testamento ológrafo deben ejecutarse con particular rigurosidad.

El testamento ológrafo es ineficaz jurídicamente hasta tanto no finalice el procedimiento *ex parte* de adveración y protocolización, establecido en el Artículo 551A del Código de Enjuiciamiento Civil de Puerto Rico de 1933 (Código de Enjuiciamiento Civil), 32 LPRA sec. 2280a. *In re De la Texera Barnés,* supra. Como se sabe, el objetivo principal de los actos de adveración y protocolización es corroborar que la autoría del documento es exclusiva del testador. *Íd.; Ab Intestato Lugo Rodríguez,* 151 DPR 572, 579 (2000). A esos efectos, es necesario examinar si el documento refleja la forma en que el causante escribía habitualmente, así como, la identidad y autenticidad de la firma de quien se señala como autor. Luego de sopesar la prueba testifical vertida, si el foro de instancia no queda persuadido de que fue el testador quien redactó y firmó el manuscrito, podrá exigir prueba de peritos calígrafos. *Ab Intestato Lugo Rodríguez,* supra.

En términos de su caducidad, si el testamento ológrafo no se presenta para su adveración dentro de cinco (5) años, contados a partir del fallecimiento del testador, caduca. Artículo 1654 del Código Civil, 31 LPRA sec. 11285. Mientras que, el Artículo 1653 del Código Civil, *supra,* regula el proceso de adveración y protocolización

de un testamento ológrafo y preceptúa el deber de la persona en posesión de dicho documento:

> La persona que tiene en su poder un testamento ológrafo está obligada a presentarlo en el tribunal o a un notario para su adveración, dentro de los treinta (30) días desde que tiene noticia de la muerte del testador. También puede presentarlo cualquier persona que tiene un interés legítimo en el testamento.
>
> Una vez concluye el procedimiento de adveración, el testamento ológrafo debe protocolizarse para que sea eficaz.

### B. Apreciación de la prueba

Como regla general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos, en relación con la prueba testifical. *Pueblo v. Negrón Ramírez*, 213 DPR 895 (2024). Ello, debido a que, "[l]a tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada, lo cual incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778-779 (2022).[5] Después de todo, es el juzgador de los hechos o el jurado quien escucha la prueba testifical y evalúa el comportamiento de los declarantes. *Pueblo v. Negrón Ramírez,* supra.

Cónsono con lo anterior, nuestro Máximo Foro ha resuelto que, los tribunales apelativos intervienen con la apreciación de la prueba cuando: (1) el apelante demuestra la existencia de pasión, prejuicio, parcialidad o error manifiesta; o (2) si la apreciación de la prueba no concuerda con la realidad fáctica o esta es inherentemente imposible o increíble. *Pueblo v. Negrón Ramírez,* supra. A esos efectos, la parte que impugne la apreciación de la

---

[5] Citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

prueba es la parte encargada de señalar y demostrar la base para la intervención apelativa. *Pueblo v. Cabán Torres*, 117 DPR 645 (1986).

La Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, dispone que las determinaciones de hechos que surgen de algún testimonio oral no se dejarán sin efecto a no ser que se demuestre que son claramente erróneas. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 810-811 (2009). Estas determinaciones de hechos, basadas en la credibilidad que el juzgador le adjudicó al testimonio ante sí, merecen gran deferencia. *Trinidad v. Chade*, 153 DPR 280, 291 (2001). Así, únicamente intervendremos con este tipo de determinaciones de hechos cuando un análisis integral de tal prueba cause, en nuestro ánimo, una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. *Rivera Menéndez v. Action Services*, 185 DPR 431, 444 (2012).

El Tribunal de Apelaciones está en la misma posición que el juzgador de los hechos para evaluar la prueba documental que ante ese foro se presentó. *Trinidad v. Chade*, supra, pág. 292. Así, la prueba documental es susceptible de una evaluación independiente por parte de los foros revisores; al evaluarla, el Tribunal puede adoptar su propio criterio. *Rivera v. Pan Pepín*, 161 DPR 681, 687 (2004).

Por otro lado, y según la normativa vigente, en los casos de naturaleza civil, la determinación del juzgador se hará mediante la preponderancia de la prueba, a base de criterios de probabilidad.[6] El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.[7] La obligación de presentar evidencia recae primeramente sobre la parte que sostiene la afirmativa en el asunto en

---

[6] Regla 110(F) de Evidencia, 32 LPRA Ap. VI R. 110(F).
[7] Regla 110(A) de Evidencia, *supra*, R. 110(A).

controversia.[8] Así pues, en los casos de naturaleza civil, la regla general es que la obligación de presentar evidencia y persuadir al juzgador de la existencia de los elementos esenciales de una reclamación recae sobre el demandante. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 913 (2011). Asimismo, las Reglas de Evidencia establecen que la evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho.[9]

**III.**

En la presente causa, como primer y segundo señalamiento de error, la Apelante imputa al foro primario haber incidido al atender la petición de adveración y protocolización objeto de este recurso como un proceso adversativo, a pesar de ser un asunto sumario de jurisdicción voluntaria, que no produce el efecto de cosa juzgada.

En su alegato en oposición, los Demandantes argumentan que, la Apelante no cuestionó oportunamente la determinación del foro primario de convertir el pleito de adveración en un trámite ordinario. Aseguran, además, que el TPI cumplió con los requisitos procesales al celebrar una vista de adveración de forma expedita, y al aquilatar la prueba testimonial y documental allí desfilada.

Cabe puntualizar que, en *Ab Intestato Lugo Rodríguez,* supra, el Alto Foro resolvió que la autorización o denegatoria de una petición de adveración y protocolización de un testamento ológrafo es un procedimiento de jurisdicción voluntaria, no contencioso. De otra parte, en *Blanch v. Registrador,* 59 DPR 730, 736 (1942), el Tribunal Supremo dispuso que, la doctrina de cosa juzgada no aplica contra una resolución que ordena la protocolización de un testamento ológrafo, de modo que, los herederos forzosos o las

---

[8] Regla 110(B) de Evidencia, *supra*, R. 110(B).
[9] Regla 110(D) de Evidencia, *supra*, R. 110(D).

personas que se crean perjudicadas puedan recurrir mediante un juicio ordinario.

Ahora bien, según expusimos en el tracto procesal, los Demandantes en el caso de marras solicitaron intervenir en el proceso de *Petición Ex parte* que inició la Apelante para cuestionar la autenticidad del manuscrito. En atención a los señalamientos de los Demandantes atinentes a la autenticidad del documento y a los presuntos incumplimientos con las formalidades aplicables, el foro primario -dentro del manejo del caso- consolidó ambas causas. Ante las circunstancias particulares de este caso, y a pesar de la naturaleza de la causa de protocolización, reconocemos que el proceder del foro primario obedeció a su discreción en el manejo del caso y no necesariamente resulta en un error sustancial que obligue revertir el dictamen apelado.

En el tercer señalamiento de error, la Apelante cuestiona la determinación del foro primario de descartar la conclusión pericial calígrafa, sin que los Demandantes hubiesen presentado prueba pericial en contrario. Relacionado con lo antes, levanta como cuarto error que presuntamente el TPI aplicó estándares incorrectos sobre la autografía y la firma del testamento ológrafo.

Por su parte, los Demandantes en su alegato detallan la prueba documental y testimonial que ambas partes presentaron, la cual aseguran que el TPI aquilató. Exponen que, conforme a la prueba pericial, la firma del documento lee Manuel Manuel Torres, a pesar de que el perito reconoció que el causante siempre firmaba Manuel Marrero Torres. Sostiene, además, que la Apelante falló al no contrarrestar la evidencia que apunta a que el causante siempre escribía y firmaba en cursivo. Fundamentado en lo anterior, solicita que confirmemos el dictamen recurrido.

Nótese que, como parte del proceso y de conformidad al Artículo 551A del Código de Enjuiciamiento Civil, *supra,* el foro

primario celebró la vista de adveración durante la cual testificó un perito calígrafo por parte de la Apelante, así como, varios testigos de ambas partes que afirmaron conocer la letra y firma del testador.[10] Surge de la *Minuta* correspondiente que, las partes estipularon como prueba documental: el certificado de defunción del causante, la licencia de conducir del causante con su foto y firma; la tarjeta de identificación del causante que emitió el Puerto Rico National Guard Institutional Trust (FIGNA); el cheque número 253 de FirstBank fechado el 15 de enero de 2022 de $400.00 que expidió el causante; el cheque número 208 de FirstBank fechado el 11 de marzo de 2022 de $660.00 que expidió el causante; y un Acuse de Recibo de Cuenta de Depósito con FirstBank. Adicionalmente, y en apoyo a la adveración solicitada, la Apelante presentó el Informe Pericial Caligráfico que rindió el perito Evaristo Álvarez Ghigliotti; una fotografía del causante que al dorso contiene un mensaje a manuscrito; y una fotografía del causante junto a María Socorro Marrero Torres y otras personas con un mensaje a manuscrito al dorso.[11]

Examinados cuidadosamente los planteamientos de las partes, así como la totalidad del expediente, la prueba documental y las regrabaciones de la prueba testimonial desfilada durante la vista de adveración del testamento, colegimos que no procede intervenir con la apreciación de la prueba que realizó el TPI sobre este asunto. De la prueba admitida y creída por el TPI se estableció que Manuel Marrero Torres regularmente firmaba en cursivo mediante la inclusión clara de sus dos apellidos. Así lo acreditó la prueba documental y testimonial presentada, incluso, la prueba pericial de la Apelante durante la vista de adveración. En particular,

---

[10] A favor de la parte apelante declararon la Apelante, la Sra. Lozada Marrero, la Sra. María Socorro Marrero y el perito Evaristo Álvarez Ghigliotti. La prueba testimonial de los Demandantes consistió en las declaraciones de Carmen Judith Marrero Torres y el licenciado Héctor Marrero Marrero.

[11] Entrada Núm. 229 en SUMAC-TPI (caso Civil Núm. BY2023CV05153).

el perito Álvarez Ghigliotti respondió a preguntas de la representación legal de los Demandantes, lo siguiente:

| | |
|---|---|
| Lic. Gerardo M. Ortiz Torres: | Al revisar los documentos usted indica que, concluyó que habían similitudes entre esas firmas. |
| Evaristo Álvarez Ghigliotti: | Sí. |
| Licenciado Ortiz Torres: | Y la que están en los documentos. |
| Álvarez Ghigliotti: | Sí. |
| Licenciado Ortiz Torres: | Sin embargo, lo cierto es que en el documento quien lo firma o está firmado por alguien que puso el nombre de Manuel Manuel Torres, correcto. |
| Álvarez Ghigliotti: | La persona de ese nombre, sí. |
| Licenciado Ortiz Torres: | Manuel Manuel Torres, eso es lo que indica la firma, correcto. |
| Álvarez Ghigliotti: | Eh, con eso apellido Marrero, M, A, doble R, porque las dos erres están más o menos cerrados, pero entonces tiene algo de una L, que no sea que a mitad de camino, pues, este.. |
| Licenciado Ortiz Torres: | Pero ahí dice Manuel Manuel Torres, correcto. |
| Álvarez Ghigliotti: | ¿En el testamento ológrafo? Sí. |
| Licenciado Ortiz Torres: | Señoría, si le podemos acercar el Exhibit 1, si tiene copia de la parte demandada. Yo lo voy a poner aquí para que él... sí déjeme mostrarle este. Ese es, testigo, esa es la copia que usted anejó al informe y que usted recibió. |
| Álvarez Ghigliotti: | Sí, copia. |
| Licenciado Ortiz Torres: | Del documento. |
| Álvarez Ghigliotti: | Sí. |
| Licenciado Ortiz Torres: | Y lo cierto es que esa segunda palabra, apellido, nombre, termina con L, correcto. |
| Álvarez Ghigliotti: | Sí. |
| Licenciado Ortiz Torres: | No termina con O. |
| Álvarez Ghigliotti: | No. |
| Licenciado Ortiz Torres: | Y lo cierto es que apellido Marrero termina con O. |
| Álvarez Ghigliotti: | Sí. |
| Licenciado Ortiz Torres: | Y en este caso no termina con O. |
| Testigo: | No. |

| | |
|---|---|
| Licenciado Ortiz Torres: | Y podemos decir que es similar al primer, la primera palabra o lo que aparezca ahí. |
| Álvarez Ghigliotti: | Manuel, sí. |
| Licenciado Ortiz Torres: | Y se repite, Manuel Manuel. |
| Álvarez Ghigliotti: | Entiendo que sí.[12] |
| […] | |
| Licenciado Ortiz Torres: | Esta letra, eso es una L. |
| Álvarez Ghigliotti: | Sí, Manuel. |
| Licenciado Ortiz Torres: | Esta letra, es una L. |
| Álvarez Ghigliotti: | Sí, se aprecia que es una L. |
| Licenciado Ortiz Torres: | Se entiende que es un Manuel Manuel, correcto. |
| Álvarez Ghigliotti: | Sí. |
| Licenciado Ortiz Torres: | Y ese no es el nombre del causante, correcto. |
| Álvarez Ghigliotti: | En parte. |
| Licenciado Ortiz Torres: | No, él se llama Manuel Marrero Torres, no estamos hablando de la misma persona. |
| Álvarez Ghigliotti: | Pues estamos hablando, este, Manuel y Torres es de la misma persona cuando se compara con los Manuel y Torres en los otros documentos. |
| Licenciado Ortiz Torres: | Y usted dijo que esa persona siempre firma de la misma manera. |
| Álvarez Ghigliotti: | Eh, normalmente, sí. |
| Licenciado Ortiz Torres: | Y no cambia. Le pregunto de los documentos que usted revisó, usted vio algún Manuel Manuel Torres. |
| Álvarez Ghigliotti: | No. |
| Licenciado Ortiz Torres: | En ningún momento. |
| Álvarez Ghigliotti: | No. |
| Licenciado Ortiz Torres: | Él siempre firmaba Manuel Marrero Torres. |
| Álvarez Ghigliotti: | De los documentos solicitados, sí. |
| Licenciado Ortiz Torres: | Y eso no es lo que aparece aquí. No es lo que aparece. |
| Álvarez Ghigliotti: | Si estamos comparando. |
| Licenciado Ortiz Torres: | No es lo que aparece. |

[12] Regrabación de la vista de adveración, celebrada el 13 de noviembre de 2025, minutos 57:06-59:57.

| | |
|---|---|
| Álvarez Ghigliotti: | De los otros documentos, este es Marrero, Manuel Marrero Torres.[13] |

Más adelante, a preguntas de la Juez que presidió la vista de adveración ante el foro primario, el perito testificó:

| | |
|---|---|
| Juez: | Para estar clara, aquí que usted entiende que dice. |
| Álvarez Ghigliotti: | Sí, como está ahí, este Manuel Manuel Torres. |
| Juez: | Y usted dice que es la misma letra del señor, pero obviamente no es la misma fir, no es como firma siempre. |
| Álvarez Ghigliotti: | El apellido tiene por lo menos tres, cuatro letras en Marrero, pero lo último que es la L, eh, y la letra anterior, pues no, está un poco distorsionada, eh, no se fue la intención de él cuando lo escribió, pero sí, el, el nombre, el primer nombre y el segundo apellido es lo mismo como comparaciones con las demás firmas. |
| Juez: | Okay, gracias. |
| Álvarez Ghigliotti: | Gracias usted.[14] |

Análogamente, la prueba desfilada durante la vista de adveración estableció que, habitualmente, el causante Manuel Marrero Torres redactaba en letra cursiva. Lo antes, en consideración a que, el documento objeto de adveración está redactado en letra de molde. Coincidimos con el foro primario en que, la Apelante no presentó prueba fehaciente de escritos del causante a manuscrito a modo de constatar y acreditar que el documento objeto de adveración fue redactado bajo el puño y letra del causante. La Apelante únicamente presentó dos fotografías que al dorso contienen un mensaje en letra de molde sin que ello sea suficiente para demostrar que quien lo suscribió fue el causante. En ausencia de prueba fehaciente y acreditativa de que el documento fechado el 27 de enero de 2022 fue firmado, fechado y autografiado por el causante Manuel Marrero Torres, el foro primario estaba impedido de declarar ha lugar la solicitud de adveración de

---

[13] *Íd.*, minutos 1:01:57-1:03:27.
[14] *Íd.*, minutos 1:18:09-1:18:56.

testamento ológrafo. Sobre tales bases resolvemos que, el tercer y cuarto error no fueron cometidos.

Por último, la Apelante cuestiona en su quinto señalamiento de error que el TPI incidió al no fundamentar su denegatoria a la *Moción Solicitando Reconsideración* que dicha parte instó. Sin embargo, la Regla 42.2 de las Reglas de Procedimiento Civil, *supra*, establece que el foro primario no está obligado a especificar los hechos probados y a consignar las conclusiones de derecho, entre otros, al adjudicar "mociones bajo las Reglas 10 ó 36.1 y 36.2, o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2[..]." Por virtud de lo dispuesto en la citada Regla 42.2, el foro primario actuó conforme a derecho al notificar la *Resolución Interlocutoria* mediante la cual proveyó "No ha lugar" al petitorio de reconsideración que instó la Apelante, sin incluir determinaciones de hechos y conclusiones de derecho. El quinto error no se cometió.

## IV.

Por los fundamentos que anteceden, confirmamos la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones